## HILL v. BELNOSKI.
### No. 2132.

Court of Civil Appeals of Texas. Beaumont.
Oct. 29, 1931.

Rehearing Denied Nov. 4, 1931.

J. L. Pitts, of Conroe, for appellant.

S. A. Crawford, of Conroe, for appellee.

WALKER, J.

In the court below appellee was plaintiff and appellant defendant. Since appellant's first fourteen propositions challenge the sufficiency of appellee's petition to state a cause of action, we quote as follows from the petition:

"Plaintiff represents to the court that during the year, 1928, the defendant herein and your petitioner were engaged in buying and selling at different times land and timber and especially about the months of March, April and May of that year; that the defendant, Warfield Hill, came to Willis during the month of March, 1928, or about said time and told this plaintiff if he knew where there was any land and timber that they would handle the same and the plaintiff replied to the defendant that he would get him timber and lands that were for sale provided he would finance the deals, to which defendant agreed. This agreement was reached and the defendant agreed to furnish the money and the plaintiff would locate and purchase the timber or land and the profits were to be divided equally between them; that plaintiff explained at that time to this defendant that he had in mind three tracts of timber and land that he could purchase, The Rice Spiller, the Dr. Curtis timber and the 171 acres of land and timber in the De La Garza survey and it was then the defendant drew up the memorandum contract which stated in substance that when the land and timber was located and sold, as provided for in the contract, that all profits should be divided between plaintiff and defendant in an equal proportion. This contract was reduced to writing and delivered to plaintiff but the same has been mislaid and cannot be produced at this time. That in pursuance of said contract and agreement, made between plaintiff and defendant, whereby it was agreed, one with the other, that the said Belnoski would locate the land and timber and the defendant, Warfield Hill, would finance the deal and divide the profits equally, which contract was mutual and the terms of which were agreed upon by both parties; the plaintiff located and had located the 171 acres of land and timber described herein and plaintiff and defendant went upon said land to locate the corners and look at the timber before a deal was closed; sought purchasers before defendant went to Cleveland to close a deal for them before the same was closed and asked plaintiff to go with him,

when plaintiff replied in substance that he, defendant, could close the transaction without his assistance and to go to Cleveland and buy the land and timber and they would resell it, divide the profits, to which defendant agreed. That under and by virtue of the terms of the contract between plaintiff and defendant the plaintiff is entitled to one-half the net profits of the timber sold to the J. S. Hunt Lumber Company and one-half of said land.

"III. The first two tracts mentioned herein were sold by plaintiff and defendant and the profits divided equally; that all of said land was situated in Montgomery County; that the contract herein referred to was made and entered into at Willis, Montgomery County, Texas; that the defendant misrepresented to plaintiff when he stated to him and provided for in the contract that he would divide equally the land and timber or the profits arising therefrom as to the 171 acres hereinafter described as he secretly and without knowledge on the part of this plaintiff and with the intent to defraud him, left Montgomery County and went to Cleveland, in Liberty County, and there closed the deal for this land and timber and took the title to the same in his own name and thereafter sold the timber from said land for the sum of One Thousand ($1,000.00) Dollars to the J. S. Hunt Lumber Company without paying this plaintiff any part of the profits or giving him any portion of the land, or deeding him any portion of the same, consisting of the 171 acres described herein.

"IV. That this defendant acquired said land, consisting of 171 acres, from the Estate of Edwin Hobby for a consideration of Six Hundred Fifty & 00/100 ($650.00) Dollars as recited in the Deed which is duly of record in the Deed Records of Montgomery County, Texas, in Book 120, page 102, which he bought in Oct. 1928 and which land is described as follows. (Here follows a description of the land in controversy.)

"V. That the said defendant practiced a fraud upon plaintiff and violated and breached his contract when the same was entered into as herein stated, in that he failed to do what he agreed to do and fraudulently obtained title to this in his own name without disclosing to this plaintiff the purchase of said land and timber, as herein set out.

"VI. That this plaintiff under and by virtue of all the facts in this case and the agreement made and entered into herein is the owner of an undivided one-half interest in said 171 acres of land and the timber sold therefrom; that during the year 1928, the exact time being unknown to plaintiff, as stated herein, the pine timber from said 171 acres of land was sold to the J. S. Hunt Lumber Company for the consideration of One Thousand ($1,-000.00) Dollars."

Appellant answered by general and special exceptions, general denial, and specially as follows:

"Further answering herein this defendant would respectfully show to the Court that on or about February A. D. 1928, the exact date being to him unknown, he did ask plaintiff if he knew of any timber that could be bought, or that a man could buy. That if plaintiff did know of the location of any timber that could be purchased, and that this defendant thought was good, he could get it financed; that if plaintiff discovered any such tract of timber and communicated that fact to defendant and arranged for the purchase of said tract of timber, that defendant, in the event he was of the opinion that said timber was worth the price demanded, would make the advances necessary for its purchase, and would divide with him the profits resulting from said purchase.

"Defendant says that at no time was the tract of land set out in plaintiff's said first amended original petition mentioned by and between plaintiff and defendant in any way or manner, either verbal or in writing. That this defendant knew of said tract of land, and that it was for sale long prior to his conversation with plaintiff, and that plaintiff never at any time mentioned said tract of land to defendant, or had any contract with defendant with reference thereto."

The issues submitted by appellee's petition were found by the jury in his favor, and the judgment entered gave due effect to the jury's verdict, by awarding appellee judgment against appellant for $150 and for an undivided one-half interest in the land described in the petition.

### Opinion.

Appellant has no assignments against the answers of the jury to the questions submitted, but on oral argument asserted that the court failed to submit his defensive issues. However, he has no proposition directing our attention to any specific issue raised by his pleadings and testimony, not covered by the court's charge.

His general demurrer and special exceptions to the plaintiff's petition are brought forward by the following propositions:

(1, 6, 10, and 11) The petition did not identify the subject-matter of the controversy and did not state the time of its performance. (2) Since appellee pleaded an executory contract, it was necessary to allege due performance of its material conditions. (3, 8, and 9) The petition failed to state facts entitling appellee to the specific relief prayed for. (4) The extraneous matters alleged in the petition should have been eliminated as being immaterial, irrelevant, and prejudicial. (5 and 7) The contract pleaded was unilateral. (10 and 11) The contract as pleaded was within the statute of frauds because the land in con-

troversy was not specifically described in the contract. (12 and 13) The facts pleaded did not constitute fraud. (14) The written contract pleaded by appellee was within the statute of frauds and, therefore, could not be extended by a parol contemporaneous agreement.

The above contentions are brought forward by appellant under fourteen different propositions, which we have grouped as above indicated. In our judgment the petition was not subject to any of the exceptions urged. The land and timber included in the contract was sufficiently identified. The tract of 171 acres on the De La Garza survey was identified in the contract by a specific designation and by the pleading by specific metes and bounds. Appellee's petition clearly alleged the performance of every element of the contract as pleaded; the pointing out of the timber by him, its purchase under the contract in a manner satisfactory to both parties, and the sale of the timber at a price in excess of the purchase price, under the evidence, showing a net profit on the timber alone of $300, thereby leaving the partners entitled to the land also as an element of the profit contemplated by the contract. These facts were sufficient to support appellee's prayer for one-half the net profits in the timber and an undivided one-half interest in the land. The court did not err in refusing to strike from the petition the allegation to the effect that the Spiller and Curtis timber were included within the original contract. The contract was not unilateral, but was, in its essential conditions, a valid and binding obligation against both parties. The facts pleaded constituted actionable fraud sufficient to entitle appellee to the equitable relief prayed for. The petition contained no allegation in violation of the statute of frauds.

By the fifteenth proposition appellant complains that the court erred in receiving testimony relating to property other than the 171 acres. There is no merit in this contention. It was permissible for appellee to prove that the original contract included not only the 171 acres involved in this litigation, but also the Spiller and Curtis timber.

The sixteenth, seventeenth, and eighteenth propositions complain of the admission of certain testimony offered by appellee. No error is shown under these propositions. Thus it was permissible for appellee to show that, in company with appellant, he approached a third person with the proposition to sell him this timber. That appellant was not present during all the conversation was immaterial, in view of the fact that the testimony offered went no further than to show a persistent effort by appellant and appellee to sell the timber in controversy in this suit. While under these propositions appellant complains that the court erred in permitting appellee to lead his witnesses, no statement is made in the brief supporting this contention.

Under the evidence it was conceded that the Spiller and Curtis timber were included in the contract between appellee and appellant. Appellant insists that the issues raised by appellee's petition should have been limited to the 171 acres in controversy and that the questions should have been so framed as to eliminate all other timber. Question No. 1 inquired of the jury whether or not appellee and appellant entered into a contract "to buy and sell land and timber." The other questions related specifically to the 171 acres in controversy. Under the facts stated, the form of Question No. 1 was not reversible error. The questions submitted involved no issue not raised by the pleadings. This disposes of appellant's nineteenth and twentieth propositions.

The twenty-first and twenty-second propositions are to the effect that it is the duty of the court to submit all issues raised by the pleadings, and where a material issue is raised by the pleadings and evidence "it becomes an issue of fact for the jury to determine under proper instructions." We think the charge submitted to the jury all material issues; at least, appellant has pointed out no specific issue that the court refused to submit.

By the twenty-third proposition appellant insists that, "where the obligations of a contract are mutual and dependent, a party seeking to enforce it, or recover damages for a breach, must show that he has performed, or offered to perform, all its provisions on his part." No error is shown under this proposition. Appellee pleaded the reciprocal obligations assumed by each party under the contract and then pleaded the due performance by him of the obligations assumed by him in a manner satisfactory to both parties. His testimony supported his pleadings.

We have carefully reviewed all of appellant's assignments and find no error under any of them.

It is, therefore, ordered that the judgment of the lower court be, and the same is hereby, in all things affirmed.

### On Rehearing.

Appellant asserts that we erred in holding that he has no proposition directing our attention to any specific issue raised by the pleadings and testimony, not covered by the trial court's main charge. His propositions, pertinent to this assignment, with their accompanying statements, are as follows:

"Twenty-First Proposition. When a cause of action is submitted to the jury on special issues, all the issues of fact made by the pleadings must be submitted and determined by them before final judgment." The statement made under this proposition consists of

an analysis of the petition and of the three first issues submitted by the charge. In this statement appellant does not direct our attention to any specific issue not covered by the charge.

"Twenty-Second Proposition. Where a material issue is raised, both by the pleadings and by the evidence, it becomes an issue of fact for the jury to determine under proper instructions." The statement under this proposition is as follows: "The plaintiff pleaded and proved that the defendant agreed to divide the profits derived from the sale of the property here sued upon the defendant denied, both in his pleadings and in his testimony that he ever promised anything to the plaintiff (appellee) with reference to this particular tract."

"Twenty-Third Proposition. Where the obligations of a contract are mutual and dependent, a party seeking to enforce it, or recover damages for a breach, must show that he has performed or offered to perform all its provisions on his part." The statement under this proposition consists only of excerpts from the testimony of appellee.

We think this statement from the record satisfactorily answers appellant's assignment.

The motion for rehearing is, therefore, in all things overruled.